USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/18/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VISTA FOOD EXCHANGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> LAWSON FOODS LLC, <br><br> Defendants. | Docket No. 1:17-cv-07454-ALC-SN <br><br> **STIPULATION AND ORDER REGARDING ESI PRODUCTION PROTOCOL** |

This matter having come before the Court by stipulation of Plaintiff Vista Food Exchange, Inc. ("Vista") and Defendant Lawson Foods LLC ("Lawson"), for the entry of an order governing the protocol for the production of electronically stored information by either party and its respective counsel or by any non-party in the course of discovery in this matter to the extent set forth below (the "Stipulation"); and the parties, by, between and among their respective counsel, having stipulated and agreed to the terms set forth herein, and good cause having been shown.

IT IS HEREBY ORDERED that:

**A.  ELECTRONIC DISCOVERY**

**1**. **General Format of Production**. Vista shall produce each electronic document (or other separate item of ESI) as a Bates-stamped, 300 dots per inch (dpi), single-page, Group IV TIFF image. Lawson shall produce each electronic document (or other separate item of ESI) as a Bates-stamped .pdf searchable file to Vista. When converting ESI to TIFF or .pdf searchable format from the electronic format of the application in which the ESI is normally created, viewed and/or modified, metadata values should be extracted and produced in a load file ("metadata load file"). *See* Section A.4 *infra*. Thus, the files should be produced in a format that will enable each document to be uploaded and viewed using (1) Relativity for production to Lawson or (2)

Concordance for production to Vista. All documents are to be provided with per document searchable text (.TXT) files, and such text files shall contain the full text extraction. If a document is scanned into TIFF or .pdf format, the text file should contain that document's OCR text. These text files and image load files should indicate page breaks to the extent possible.

All electronic production, whether in the foregoing format or in native format as described below, should be made to the receiving party on a CD-ROM, DVD, or portable hard drive or by sending a link to an FTP site containing the relevant files.

2. **Production of Spreadsheet ESI**. Unless such materials contain privileged information, spreadsheets, including, for example, MS Excel spreadsheets, should be produced in native format with a TIFF or .pdf placeholder (dependent on the identity of the receiving party), and the placeholder shall contain a link to the native spreadsheet file.

If any such material contains information that is subject to a claim of privilege, that material should be produced in the form of a redacted TIFF image or .pdf file (dependent on the identity of the receiving party).

3. **Production of Audio Files**. Audio files should be produced in the native audio file format in which they were maintained in the ordinary course of business. Produced native audio files should be accompanied by a reference file containing the name of the file and MD5 hash value for each produced file. If the audio files are maintained in a non-standard format, they should be produced in MP3 format.

4. **Metadata**. Metadata information should be produced in a separate load file or load files in a Relativity-compatible file format for production to Lawson, a Concordance-compatible file format for production to Vista, or other mutually acceptable format. To the extent they are

reasonably available, the metadata values to be extracted and produced in the metadata load files are:

    a. <u>Metadata from Email</u> – (a) Email Subject; (b) Email Author; (c) Email Recipient; (d) Email CC; (e) Email BCC; (f) Email Received Date: MM/DD/YYYY; (g) Email Received Time: HH:MM:SS; (h) Email Sent Date: MM/DD/YYYY; (i) Email Sent Time: HH:MM:SS; and (j) Email Conversation Thread ID.

    b. <u>Metadata from Other Electronic Files</u> – (a) File Name; (b) File Author; (c) File Created Date: MM/DD/YYYY; (d) File Created Time: HH:MM:SS; (e) File Modified Date: MM/DD/YYYY; (f) File Modified Time: HH:MM:SS; and (g) File Extension.

    c. <u>Metadata for both Email and Electronic Files</u> – (a) Custodian; (b) Source; (c) Original Path; and (d) MD5 Hash.

<u>Metadata for all container files (*e.g.*, .ZIP, .RAR, .etc.) and documents that contain an attachment (for example, email)</u> – to the extent reasonably available, the following fields should be produced as part of the metadata load file to provide the parent/child or parent/sibling relationship: (a) Production Number Begin; (b) Production Number End; (c) Production Attachment Range Number Begin; (d) Production Attachment Range Number End; (e) Attachment Name; and (f) Production Doc Page Count.

Each party reserves the right to request the production of specific files in native format, should the requesting party determine in good faith that such production is necessary, and each party also reserves the right to challenge or compel compliance with such a request, as the case may be.

3

5. **Bates Numbering**. The Bates number and any confidentiality designation should be electronically branded on each produced TIFF image or .pdf file of ESI but should not be included in the extracted text of the ESI.

6. **Document Unitization**. Emails and related attachments should be produced in a manner that maintains the parent-child relationship, if any.

7. **Duplicates**. If exact duplicate documents (based on MD5 or SHA-1 hash values at the document level) reside within a producing party's data set, that party is required to produce only a single copy of a responsive document contained within a custodian's data set. This de-duping should be done only on exact duplicate documents. Only documents where the main document and attachments are exactly the same are to be deemed or treated as duplicates.

8. **Structured Data**. Generally, databases responsive to a party's document request should be produced in a mutually agreeable data exchange format. Upon discovery of a responsive database, the producing party will meet and confer with the requesting party regarding the data to be produced, if any, and the form(s) of production thereof, to the extent the database cannot be produced consistent with the specifications outlined above. As part of the meet and confer process, the producing party should provide the following information, to the extent reasonably available, to the requesting party:

- Database Name
- Type of Database
- Software Platform
- Software Version
- Business Purpose
- Users
- Size in Records
- Size in Gigabytes
- A List of Standard Reports
- Database Owner or Administrator's Name
- Field List
- Field Definitions (including field type, size and use)

4

9. **Search Criteria**.  If either party intends to employ an electronic search to assist in the identification of potentially responsive ESI, then the parties must, in good faith, confer and attempt to reach an agreement without intervention of the Court regarding the searches to be conducted, the entities to be searched, the search terms to be utilized, the data to be searched and the relevant time period for such searches. Recognizing the potentially significant burden and expense of the searches contemplated by this Paragraph, if the requesting party seeks additional ESI after the initial agreed searches have been performed, the parties must use their best efforts to reach an agreement regarding whether good cause exists for any additional searches to be conducted during the discovery period. If the parties fail to reach agreement on the parameters of a requested search, the requesting party may seek Court intervention, but the non-requesting party has no obligation to conduct the search until it is ordered by the Court.

10. **Not Reasonably Accessible Data**.  The parties agree that the collection of ESI to satisfy their discovery obligations in this litigation can exclude the following categories of data:

    a.    Backup tapes or systems, unless the responsive ESI exists only on such backup tapes or systems.

    b.    Unallocated space and fragments, meaning that the parties are only interested in the collection of active and intact files, such as formats in Microsoft Word®, PowerPoint®, Excel®, and any other format that allows users to modify the data in a file. The parties do not seek collection of data in program (such as Operating System or Windows®) file folders.

If a party reasonably believes that any of its responsive ESI exists only on backup tapes or systems, it should (i) so state in its response to any discovery request, (ii) identify the tapes or systems at issue, and (iii) describe the ESI at issue.

Nothing in this section limits a party's right to petition the Court for an appropriate allocation of production costs if the Court orders production of backup tapes or other information covered by this section.

11. **Redaction of Information**. If any information is redacted based on any claim of privilege or immunity, the producing party shall provide a log of redacted documents including the basis for the redaction. During the pendency of the litigation, an electronic copy of the original unredacted data shall be preserved without modification, alteration, or addition to the content of such data, including any metadata associated therewith.

12. **Confidentiality to be Honored by Selected E-discovery Vendors**. Each party shall be responsible for securing from any e-discovery vendor retained by the party to provide document production or related litigation support services in connection with this action a signed agreement in a stipulated form that the vendor will honor the terms of any Protective Order entered in this litigation. Such agreements from such vendor employees shall be promptly produced to the adverse party upon request.

13. **Duplicate Hard-Copy Production Not Required**. Any exact copy of a document produced in electronic format need not also be produced in hard-copy format. A hard-copy document with handwriting should not be considered an exact copy of an electronic document.

B. **COLOR FOR INTERPRETATION REQUIRED**

If any ESI or other document is produced as a black-and-white copy and it is apparent that the original document was in color, and color is material to the interpretation of the document, the producing party shall produce a color copy of the document, if a color copy exists, to the receiving party within five (5) days after a request for a color copy by the receiving party. The request must identify the document in question by Bates number.

SO ORDERED

_____
SARAH NETBURN
United States Magistrate Judge

April 18, 2018
New York, New York

Form agreed to and stipulated by:

**JONATHAN C. SCOTT, P.C.**                **LUPKIN PLLC**

By: _____        By: _____
    Jonathan C. Scott                            Michael B. Smith

1920 McKinney Avenue,                      80 Broad Street, Suite 1301
7th Floor                                  New York, New York 10004
Dallas, Texas 75201                        (646) 367-2771
(214) 999-2901                             (646) 219-4870 (fax)
                                                        msmith@lupkinpllc.com

*Counsel for Plaintiff*
*Vista Food Exchange, Inc.*                *Counsel for Defendant*
                                                        *Lawson Foods, LLC*

4848-2774-5890, v. 1