UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VISTA FOOD EXCHANGE, INC.

Plaintiff,

-against-

Case No. 1:17-cv-07454-ALC-SN

LAWSON FOODS, LLC,

Defendant.

## MOTION FOR SANCTIONS

## (Fed. R. Civ. P. 11)

**LUPKIN PLLC**
80 Broad Street, Suite 1301
New York, New York 10004
(646) 367-2771
(646) 219-4870 (fax)

Jonathan D. Lupkin (JL 0792)
Michael B. Smith (MS 3281)
jlupkin@lupkinpllc.com
msmith@lupkinpllc.com

*Counsel for Lawson Foods LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF FACTS ................................................................................................. 1

ARGUMENT ..................................................................................................................... 8

I.      Legal Standard ........................................................................................................ 9

II.     Vista and its Counsel Knew or Should Have Known that the Subject Product
        Did Not Contain Ractopamine.............................................................................. 10

III.    Vista and Its Counsel Knew or Should Have Known that the Subject Product
        Was Not Missing "Export Documentation" .......................................................... 12

IV.     Vista Has No Evidentiary Basis for its Allegations that Lawson Filed
        "Forged, Falsified, or Incorrect" Documents with Customs .............................. 14

V.      The Amended Complaint is Being Presented for Improper Purposes ........... 14

    A.      Vista's Counsel Refused to Withdraw the Allegations when Confronted
            with Evidence of their Falsity ................................................................. 15

    B.      Vista Is Using this Litigation to Seek Disclosure of Competitively Sensitive
            Information Not Relevant to its Claims ..................................................... 17

VI.     Dismissal with Prejudice and Attorneys' Fees Are Appropriate Sanctions ... 17

CONCLUSION ................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

Cases

*Bletas v. Deluca*,

    2011 WL 13130879 (S.D.N.Y Nov. 15, 2011) .......................................................................... 18

*Calloway v. Marvel Entertainment Group*,

    111 F.R.D. 637 (S.D.N.Y. 1986) ........................................................................................... 16

*Cortec Industries, Inc. v. Sum Holding L.P.*,

    949 F.2d 42 (2d Cir. 1991) ..................................................................................................... 18

*Galin v. Hamada*,

    --- F.Supp.3d ---, 2017 WL 4286309 (S.D.N.Y. Sept. 26, 2017) ..................................... 15, 16

*In re September 11th Liability Insurance Coverage Cases*,

    243 F.R.D. 114 (S.D.N.Y. 2007) ...................................................................................... passim

*Lawrence v. Wilder Richman Securities Corp.*,

    417 Fed.Appx. 11 (2d Cir. 2010) ........................................................................................... 19

*O'Brien v. Alexander*,

    101 F.3d 1479 (2d Cir. 1996) ................................................................................................. 16

*Schlaifer Nance & Co. Inc. v. Estate of Warhol*,

    194 F.3d 323 (2d Cir. 1999) ................................................................................................... 15

*South Pacific Shipping Co. Ltd. Inc. v. Redi-Fresh Produce Inc.*,

    2014 WL 6968039 (S.D.N.Y. Dec. 9, 2014) ......................................................................... 14

*Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,

    682 F.3d 170 (2d Cir. 2012) ........................................................................................9, 11, 13

Statutes

21 U.S.C. §§ 601 ................................................................................................................... 4

28 U.S.C. § 1927 ................................................................................................................... 8

Rules

Fed. R. Civ. P. 9(b) ............................................................................................................. 14

Fed. R. Civ. P. 11 .......................................................................................................... passim

Fed. R. Civ. P. 37 ................................................................................................................. 8

Regulations

9 CFR § 312.8 ....................................................................................................................... 4

---

*"In order to function, the court must repose trust in the attorneys who come before it to make factual representations supported by evidence."[1]*

---

We are as hesitant to bring a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure as courts generally are to grant them. However, the factual allegations underpinning the complaints presented in this action appear to be utterly refuted by evidence in the possession of or readily available to the plaintiff and its counsel at the time they presented those pleadings to the Court, and counsel for plaintiff has—even after being confronted with that evidence—failed to identify any evidentiary basis for those allegations or to withdraw the unsupported allegations. Thus, we find ourselves with no alternative that would protect Defendant Lawson Foods LLC ("Lawson") from further unnecessary burden, expense, and harassment at the hands of Plaintiff Vista Food Exchange, Inc. ("Vista") and its counsel.[2]

## STATEMENT OF FACTS

Lawson buys and sells, among other things, pork products. Declaration of Simon Law ("Law Decl."), ¶ 2. Lawson purchased some of those pork products from Vista. *Id.* Vista and Lawson also are competitors. *Id.* ¶ 3. Vista purchased some of the products it sold to Lawson from Smithfield Foods ("Smithfield"). Amended Complaint ("AC"), ¶ 1.[3]

---

[1] *In re September 11th Liability Insurance Coverage Cases*, 243 F.R.D. 114, 124 (S.D.N.Y. 2007)

[2] On April 19, 2018, Vista filed a Second Amended Complaint. Because that complaint does not "appropriately correct" the sanctionable defects in Vista's First Amended Complaint, it does not affect Lawson's ability to file this motion pursuant to Fed. R. Civ. P. 11(c)(2). To the contrary, the Second Amended Complaint constitutes yet another series of violations of Rule 11.

[3] Copies of Vista's original Complaint ("OC") and the Amended Complaint are attached to the Declaration of Michael B. Smith ("Smith Decl.") as Exhibits 7 and 8, respectively.

**May 2016: Smithfield Complains of Product with Ractopamine in China**

In May of 2016, Smithfield expressed concern that it had found "uncertified" product it sold to Vista, and which Vista sold to Lawson, in China. *Id.* Ex. 2. According to Vista, "uncertified" product is "deemed not qualified or appropriate for export to the PRC under its regulations"—specifically, regulations banning pork products containing a specific growth hormone ("ractopamine")—and thus "not accompanied with any documentation necessary to export the product outside of the United States." *Id.* ¶¶ 7-10, 44-47. Smithfield's stated concern was that "such exports to China would be in strict violation of PRC [People's Republic of China] regulations and subject Smithfield to penalties under the laws of the PRC." *Id.* Ex. 2.

On May 25, 2016, Vista and Lawson counter-signed a letter from Smithfield in which each stated it would not sell uncertified Smithfield product it believed would be exported to China. *Id.* Smithfield wrote: "[i]f we find any evidence of shipment of these products to the PRC by Lawson, in strict violation of PRC regulations, we will cancel all orders from Vista intended for Lawson, and take any other actions we deem appropriate and the violator will be responsible for any and all losses arising from export of non-certified pork to the PRC." *Id.*

**November 2016: Lawson Ships Product *Without* Ractopamine to China**

On November 9 and 10, 2016, Smithfield packed certain lots of frozen pork spareribs, and shipped that product Vista on November 10 and 11, 2016 pursuant to purchase orders numbered 1457555, 1457556, and 1457558 (the "Subject Product"). Law Decl. Ex. B. Lawson purchased the Subject Product from Vista between November 14 and November 16, 2016, and on or about November 22, 2016, Lawson shipped the Subject Product to China. *Id.* ¶ 8, Exs. C-E. The Subject Product was ractopamine-free and certified for export to China by the United States Department of Agriculture ("USDA").

2

**The USDA Certified the Subject Product as Ractopamine-Free**

The delivery manifests Smithfield sent to Vista show the Subject Product came from two of Smithfield's slaughter establishments: one at 15855 Highway 87 West, Tar Heel, N.C. (the "Tar Heel Plant"), and one at 624 East Railroad Street, Clinton, N.C. (the "Clinton Plant"). Law Decl. Exs. C-E. At the time Smithfield packed and shipped the Subject Product, both plants were on the USDA Agricultural Marketing Service ("AMS") Official Listing of Never Fed Beta Agonists—a USDA list of pork processing plants operating under a government-approved ractopamine control program (the "AMS Approved List"). Declaration of Isabelle G. Rosett ("Rosett Decl.") Ex. 2.

Plants on the AMS Approved List are exempt from certain requirements of the USDA Food Safety Inspection Service ("FSIS"), including the requirement that product shipped from those plants be accompanied by export documentation certifying the product has been tested and found to be ractopamine-free.[4] A plant's "establishment number" functions in lieu of that export documentation. *Id.*

As indicated on the Subject Product's labeling, the Tar Heel Plant is establishment no. 18079; and the Clinton Plant is establishment no. 413:

 

---

[4] *See* USDA FSIS Export Requirements for the People's Republic of China ("China Export Requirements"), https://www.fsis.usda.gov/wps/portal/fsis/topics/international-affairs/exporting-products/export-library-requirements-by-country/Peoples-Republic-of-China, a copy of which is attached to the Rosett Decl. as Exhibit 4.

Law Decl., Ex. B. These numbers also appear on the USDA inspection stickers certifying that the Subject Product has been "INSPECTED AND PASSED BY THE DEPARTMENT OF AGRICULTURE:

 

*Id.*

**The USDA Approved the Subject Product for Export to China**

Each box containing the Subject Product also bears an official USDA export inspection mark pursuant to rules promulgated under the Federal Meat Inspection Act, 21 U.S.C. §§ 601, *et seq.* and in the form prescribed by 9 CFR § 312.8:

 

*Id.* Both boxes also bear a label indicating the Subject Product was being exported to China:

 

*Id.*

The FSIS will not certify pork products for export to China unless the products are confirmed to be free of ractopamine:

> Pork and pork products with FSIS export certificate issuance dates on or after July 1, 2014 must be derived from lots of hogs that are produced in accordance

with either of the Agricultural Marketing Service's (AMS) ractopamine control program's [*sic*] identified as the Never Fed Beta Agonist Program or a specifically developed, written ractopamine-free program. Pork and pork products that are not produced under one of these ractopamine control program options are not eligible for export to China and should not be certified.

Rosett Decl. Ex. 4. By virtue of having come from plants on the AMS Approved List, as reflected in the product's labeling, the Subject Product was certified ractopamine-free and, on that basis, the FSIS issued export certificates for the Subject Product. *See* Law Decl. Exs. F & G.

**Smithfield Cuts Vista Off**

In May 2017, Smithfield found the Subject Product in China, and notified Vista it had traced the product back to the purchase orders identified in the Amended Complaint. Law Decl. Ex. B. According to Vista, upon making this discovery, Smithfield "[i]mmediately…refused to sell any product to Vista…." AC ¶ 82.

**Vista Commences This Action**

On September 29, 2017, Vista filed its original Complaint against Lawson, alleging breach of contract, tortious interference, and promissory estoppel. That complaint was signed by Jonathan C. Scott on behalf of the law firm of Jonathan C. Scott, P.C. as counsel for Vista. In the complaint, Vista alleged that the Subject Product was not certified or qualified for export to the People's Republic of China ("China") because it contained ractopamine (OC ¶¶ 3, 41, 42), and that Smithfield's termination of its relationship with Vista was a direct result of finding the Subject Product in China. OC ¶¶ 3, 41, 43, 63.

On February 15, 2018, Vista filed the Amended Complaint. Jonathan C. Scott also signed this pleading on behalf of Jonathan C. Scott, P.C. Again, Vista alleged that Lawson violated unspecified U.S. or Chinese laws or regulations by shipping product containing ractopamine to China. *See, e.g.*, AC ¶¶ 7-8, 43-45. Vista also added two additional accusations. Specifically, Vista

now alleges that the product at issue was sent to China without "export documentation" (*see, e.g.*, AC ¶¶ 45-50) and that Lawson provided U.S. and/or Chinese customs officials with "forged, falsified, or incorrect" documents (*see, e.g.*, AC ¶ 17). Vista also added allegations that "Lawson Foods did not have privity or a direct buying relationship with Smithfield." AC ¶¶ 41-42.

**<u>Vista's Counsel Refuses to Substantiate or Withdraw Allegations Contradicted by Evidence</u>**

On February 26, 2018, Christina M. Lucio (counsel for Vista) and Michael B. Smith (counsel for Lawson) met and conferred as contemplated by Fed. R. Civ. P. 26(f). Smith Decl. ¶ 2. During that call, Mr. Smith advised Ms. Lucio that the Subject Product was free of ractopamine and had all the necessary export documentation. He asked Ms. Lucio to identify the evidentiary basis on which Vista made allegations to the contrary. *Id.*

Ms. Lucio did not identify any evidentiary basis for the allegations, but agreed to look into it and (1) confirm whether Vista still contends the Subject Product contained ractopamine, (2) identify the specific laws or regulations Vista contends Lawson violated, (3) identify the "export documentation" supposedly missing from the Subject Product, and (4) identify the documents Vista alleges were "forged, falsified, or incorrect." *Id*. ¶ 3. Mr. Smith memorialized his request for that information in an email on February 27, 2018. *Id.* Ex. 1.

That same day, Ms. Lucio responded with a letter broadly asserting that Vista "believe[s] that the amended complaint is legally sufficient and that no clarification is warranted." *Id.* Ex. 2. Ms. Lucio further asserted that, because "some of the documentation/information you seek is in the exclusive possession of your client and/or third parties…I cannot 'agree to identify' all of the information you have requested but will endeavor to provide additional guidance as appropriate." *Id.* Ms. Lucio did not say what evidence necessary to respond to those questions was unavailable to Vista, nor did she did not provide a meaningful substantive response.

6

Ms. Lucio did not identify any law or regulation Vista contends Lawson violated, nor did she explain why Vista would need information from third parties before it can determine what law(s) it alleges Lawson violated.

Ms. Lucio also did not identify the export documentation Vista contends was missing. Instead, Ms. Lucio provided a link to the FSIS website, "which provides a non-exclusive list of applicable regulations and identifies some of the export documentation required." *Id.* Again, Ms. Lucio did not explain why, if Vista and its counsel had an evidentiary basis for alleging that required export documentation was missing, they would be unable to identify that documentation.

Ms. Lucio's letter ignores Lawson's request that Vista identify the supposedly "forged, falsified, or incorrect" export documentation Vista alleges Lawson used—which, again, Vista should be able to identify if it has an evidentiary basis for that accusation. *Id.*

On March 2, 2018, Mr. Smith sent a letter to Ms. Lucio enclosing documents showing that the Subject Product was approved by the USDA for export to China. *Id.* Ex. 3. Mr. Smith reiterated his request that Vista identify the allegedly violated laws and the allegedly falsified documents, stating:

> If you believe there is evidentiary support for the allegations discussed above, please identify that support (or else withdraw the allegations) by close of business on Monday, March 5, 2018. Otherwise, we will pursue all available remedies, including but not limited to a motion for sanctions under Rule 11.

*Id.*

On March 4, 2018, Ms. Lucio sent a letter in which she again refused to identify the factual basis for the allegations in the Amended Complaint, on the basis of Vista's "belie[f] the allegations are sufficient to meet pleading standards and the standards set forth in Fed. R. Civ. P. Rule 11." *Id.* Ex. 4.

7

On March 21, 2018, Vista served its initial disclosures pursuant to Fed. R. Civ. P. 26(a). Smith Decl. Ex. 5. Those disclosures neither included nor identified any information or evidence that would rebut the evidence Lawson's counsel had presented to Vista's counsel. *Id.*

Lawson gave Vista a month to conduct additional investigation, substantiate its allegations, explain the apparently dispositive evidence, or withdraw its allegations. It did none of those things. Thus, on March 30, 2018, Lawson had no choice but to serve this motion on Vista.

## ARGUMENT

The Amended Complaint contains at least four allegations (most of them repeated throughout the complaint) that lack evidentiary support. When Lawson's counsel brought this to the attention of Vista's counsel and provided documentary evidence that appears to utterly refute those allegations, Vista's counsel was unable or unwilling to provide any evidentiary support. Vista's inability to identify the factual basis for its claims reflects counsel's failure to perform a reasonable inquiry into the truth of the allegations prior to filing the Amended Complaint, their intentional presentation to the Court of allegations they knew lacked evidentiary support, or both.[5]

Without the unsupported allegations, Vista's Amended Complaint falls apart. Thus, dismissal with prejudice is an appropriate sanction. Further, because Vista commenced this frivolous action to harass and unduly burden Lawson, and in the hopes of obtaining an unfair

---

[5] There is, conceivably, a third option: that Vista's counsel is aware of evidence that supports these factual allegations but is refusing to disclose it—even in the face of Lawson's counsel's indication that it would file a motion for sanctions under Rule 11. In that event, Vista's counsel should be sanctioned pursuant to, among other things, Fed. R. Civ. P. 37, 28 U.S.C. § 1927, and this Court's inherent power to sanction bad faith conduct.

competitive advantage through overreaching discovery requests, Vista should be ordered to reimburse Lawson for its reasonable attorneys' fees and costs.

## I.      Legal Standard

An attorney who presents to the Court a pleading, "whether by signing, filing, submitting, or later advocating it," is certifying that "to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…." Fed. R. Civ. P. 11(b).

In deciding whether a pleading violates Rule 11, courts in this Circuit apply a standard of "objective unreasonableness." *Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.* 682 F.3d 170, 177 (2d Cir. 2012). In other words, the subjective beliefs or intentions of the attorney presenting the pleading cannot excuse or mitigate a violation of the rule.[6] *Id.*; Advisory Committee Note to 1993 amendments to Fed. R. Civ. P. 11 (objective standard is "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.").

Where Rule 11(b) has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1). Courts have "significant

---

[6] On the other hand, counsel's bad faith is a factor in determining the nature and extent of sanctions, as discussed further below.

discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition by the offending person or comparable conduct by similarly situated persons." Advisory Committee Note to 1993 amendments to Fed. R. Civ. P. 11.

## II.     Vista and its Counsel Knew or Should Have Known that the Subject Product Did Not Contain Ractopamine

Vista's claims in both the original Complaint and the Amended Complaint are premised on the allegation that Lawson illegally shipped to China Smithfield pork products that are banned in that country due to "the presence of a specific growth hormone"—*i.e.* ractopamine. *See, e.g.*, OC ¶¶ 6-9, 14-18, 41, 48, 49, 62; AC ¶¶ 44-45, 47, 55, 59, 66, 68, 81. At the time they presented those allegations to the Court, Vista and its counsel knew, or should have known, that the product at issue did not contain ractopamine.

As a threshold matter, factual allegations in both pleadings are sufficient to raise the presumption that the product was ractopamine free. Vista alleges that the Subject Product was found *in China*. AC ¶ 80; OC ¶ 61. The fact that the product was found in China implies that Chinese customs officials permitted the product to enter the country, where products containing ractopamine are banned. AC ¶ 7, 44, 121; OC ¶ 6, 42, 83. Absent concrete evidence to the contrary—and, as discussed above, Vista's counsel has ignored repeated requests to identify any such evidence—Vista's counsel had a duty to investigate further before alleging the product contained ractopamine.

Even the most cursory investigation would have turned up the email Vista salesperson Dickie Lank' sent to Lawson's president, Simon Law, on May 30, 2017 notifying Mr. Law that Smithfield had traced the Subject Product back to the purchase orders at issue in this case. Law Decl. Ex. B. Mr. Lank's email attaches photographs of the boxes containing the Subject Product

10

and the USDA labels affixed thereto. *Id*. That email contains all the information Vista and its counsel needed to confirm that the product at issue did *not* contain ractopamine.

Dickie Lank's photographs show several labels on both boxes referencing the establishment numbers of the plants that produced the Subject Product. *Id.* As described in the statement of facts above, the box in the first picture contains product that originated in establishment no. 18079 (the Tar Heel Plant), and the product in the second box originated in establishment 413 (the Clinton Plant). *Id.* The delivery manifests Vista provided to Lawson also show the Subject Product came from those two plants. *Id.* Exs. C-E.

Given the nature of Vista's business, the "decades long" relationship between Vista and Smithfield (AC ¶ 3), and the extent to which Vista's counsel has alleged violations of laws and regulations concerning the export to China of pork products containing ractopamine, Vista and its counsel knew or should have known that these plants were on the AMS Approved List, and that the presence of Smithfield's plants on that list meant they "have been audited and approved by the AMS and have been found in conformance with the requirements of the Never Fed Beta Agonists Program and the criteria of their approved quality management systems."[7]

Dickie Lank's photographs also show the official USDA export inspection mark on each box certifying that the product was approved by the USDA for export to China. Law Decl. Ex. B. A reasonable person looking at the labels in the photographs Vista sent to Lawson would have concluded the product had been approved by the USDA for export to China.

Vista and its counsel presumably are more sophisticated and knowledgeable about these matters than the average "reasonable person." For example, Vista's counsel knows that FSIS will not certify pork products for export to China unless the products are confirmed to be free of

---

[7] https://www.ams.usda.gov/services/imports-exports/beta-agonists

ractopamine.[8] Thus, Vista's counsel knows that the USDA official export inspection marks are sufficient to establish that product with the marks is ractopamine free. *See* Rosett Decl. Ex. 4.

In short, the photographs Vista sent to Lawson on May 30, 2017 are, by themselves, sufficient to establish that the Subject Product was ractopamine-free. At a bare minimum, the labeling on those boxes raises a presumption that Vista's counsel has no basis to rebut. Thus, at the time Vista filed the original Complaint alleging the Subject Product contained ractopamine, Vista's counsel either had not conducted a reasonable investigation into whether the product at issue was ractopamine-free or had conducted such an investigation and ignored the results. Either way, Vista and its counsel violated Fed. R. Civ. P. 11(b)(3)—once when they filed the original Complaint alleging the Subject Product had ractopamine in it, and again when they filed the Amended Complaint containing similar allegations.

## III.   Vista and Its Counsel Knew or Should Have Known that the Subject Product Was Not Missing "Export Documentation"

In the Amended Complaint, Vista alleges that Lawson could not lawfully have exported the Subject Product because Smithfield did not provide Lawson with the appropriate export documentation when it sold the product. *See, e.g.*, AC ¶¶ 7, 8, 45-52, 57, 87. Viewed in the light most charitable to Vista's counsel, these allegations appear to be a result of counsel's failure to investigate the applicable procedures and regulations.

As noted above, the USDA issued export certificates and the Chinese government accepted the product for import; these facts give rise to a presumption that Lawson provided the necessary documentation. Thus, to allege—as it has—that Lawson did not obtain the necessary

---

[8] *See* Smith Decl. Ex. 2 (letter from Vista's counsel directing Lawson's counsel to the FSIS Export Library requirements by country on the USDA's website).

export documentation from Smithfield, Vista's counsel need a concrete evidentiary basis for

doubting the apparent truth. Yet, when asked to identify the allegedly missing documentation,

Vista's counsel ducked the question:

> In this vein, below is a link to the United States Department of Agriculture Food
> Safety and Inspection Service which provides a non-exclusive list of applicable
> regulations, and identifies some of the export documentation required.
> https://www.fsis.usda.gov/wps/portal/fsis/topics/international-
> affairs/exporting-products/export-library-requirements-by-country

Smith Decl. Ex. 2.

The FSIS webpage referenced in Vista's February 27, 2018 letter links to the China

Export Requirements, which identifies the two ways a "slaughter establishment" can demonstrate

that its products are suitable for export to China. Rosett Decl. Ex. 4.

The first (implementation of a Ractopamine Residue Program) requires the "slaughter

establishment" (in this case, Smithfield's Tar Heel and Clinton Plants) to provide certain

documentation certifying the product is free of ractopamine, which must accompany the product

"from entry to the plant through issuance of the FSIS export certificates and shipment to China."

*Id.* "Tracking will be conducted by using a copy of the testing results accompanying each

shipment or an FSIS transfer certificate that identifies the product lots and corresponding test

results." *Id.* Presumably (we can only presume, since Vista's counsel refuses to clarify), this is

the "export documentation" referenced in the Amended Complaint.

The second method (participation in the AMS Never Fed Beta Agonist program) *does not*

*require the slaughter establishment to provide export documentation* to accompany the product.

*Id.* ("Pork and pork products produced under the AMS Never Fed Beta Agonist QSVP [Quality

Systems Verification Program] *are exempt from the Ractopamine Residue Program* requirements

above.") (emphasis added). In lieu of the documentation required by the Ractopamine Residue

Program, the unique product identifier associated with establishments on the AMS Approved List serves to satisfy export requirements. *Id.* Since the product came from plants on that list, all that Lawson needed from Smithfield was the establishment numbers of the originating plants, which, as shown in Dickie Lank's photographs, appears on both boxes of the Subject Product, including on the USDA inspection stickers. Law Decl. Ex. B.

## IV. Vista Has No Evidentiary Basis for its Allegations that Lawson Filed "Forged, Falsified, or Incorrect" Documents with Customs

Vista alleges in its Amended Complaint that Lawson provided U.S. and/or Chinese customs officials with "forged, falsified, or incorrect" documents *See, e.g.*, AC ¶¶ 9, 17, 57, 122, 157, 158. As explained above, Vista knows the product had the requisite documentation (or, at the very least, knows it has no evidentiary basis to allege otherwise), so it posits that the documentation was falsified. Vista failed to identify in the Amended Complaint any specific document that was supposedly falsified (which is itself a violation of Fed. R. Civ. P. 9(b)). Vista's counsel also refused to identify those documents in response to direct requests from Lawson's counsel. *See* Smith Decl. Exs. 2, 4. Plainly, that is because there is no evidentiary basis for Vista's allegations of fraud.[9]

## V. The Amended Complaint is Being Presented for Improper Purposes

The extent to which Vista's counsel has presented critical allegations wholly lacking in evidentiary support is enough to support a conclusion that both pleadings were filed in bad faith. *South Pacific Shipping Co. Ltd. Inc. v. Redi-Fresh Produce Inc.* 2014 WL 6968039, *9 (S.D.N.Y.

---

[9] This is confirmed by Simon Law's declaration, under penalty of perjury, that he has not prepared or filed, or directed anyone else to prepare or file, any forged, falsified, or intentionally incorrect documents with U.S. or Chinese customs officials. Law Decl. ¶ 9. But Vista's counsel did not need Mr. Law's testimony to know that their allegations lacked evidentiary support.

Dec. 9, 2014) ("Bad faith can be inferred when the action is 'so completely without merit as to require the conclusion [it] must have been undertaken for some improper purpose.'") (quoting *Schlaifer Nance & Co. Inc. v. Estate of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999)).

Here, there are two further indications of Vista's bad faith. First, Vista's counsel had no legitimate justification for refusing to either identify evidentiary support for its allegations or withdraw them, thus requiring Lawson to file this motion. Second, the topics of discovery Vista intends to pursue reveal an intention to use this lawsuit to improperly obtain competitively sensitive information through discovery. As such, Vista's pleadings violate Fed. R. Civ. P. 11(b)(1), which requires an attorney to represent it is not presenting a pleading "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of the litigation."

## A.   Vista's Counsel Refused to Withdraw the Allegations when Confronted with Evidence of their Falsity

Vista's counsel's refusal to withdraw allegations it knew or should have known lacked evidentiary support, even after confronted with documentary evidence utterly refuting those allegations, is an independent basis for imposing sanctions. *Galin v. Hamada*, --- F.Supp.3d ---, 2017 WL 4286309, *9 (S.D.N.Y. Sept. 26, 2017) ("Galin and his counsel had an obligation under Rule 11 to withdraw the Complaint because they knew—by that point if not earlier—that their allegations on the central (and dispositive) issue in the case were utterly lacking in support.") (quotations omitted).

On March 2, 2018, Lawson's counsel confronted Vista's counsel with the evidence described above and asked counsel to identify the evidentiary support for its allegations to the contrary—or withdraw the unsupported allegations. Smith Decl. Ex. 3. Vista's counsel was

unable to identify any such evidence, responding instead with empty protestations that the evidence identified by Lawson's counsel was not "dispositive." *Id.* Ex. 4.

Vista's response ignores the standards imposed on Vista's counsel by, among others, Fed. R. Civ. P. 11 and N.Y. Rules of Professional Conduct, Rules 3.1 and 3.3. Vista's counsel is not free to make any allegations it wishes until and unless Lawson presents it with "dispositive" evidence refuting those allegations. Rather, Vista's counsel must have affirmative evidence that the allegations they are presenting are true.[10] *Calloway v. Marvel Entertainment Group*, 111 F.R.D. 637, 647 (S.D.N.Y. 1986) ("Given the admitted absence of any affirmative evidence…it is inconceivable that this allegation could have been made in accordance with the obligations imposed by Rule 11.") (modified on other grounds).

Similarly, when counsel for Lawson asked Vista's counsel, point blank, whether it continues to maintain that the product contained ractopamine, Vista's counsel simply evaded the question, stating: "regardless of whether the product contained ractopamine or not, Vista's position is, in part, that the subject product was sold to Lawson without export documentation, thus it is evident that it was never intended for export." *Id.* Exs. 3, 4. This cavalier attitude towards the veracity of Vista's allegations underscores the need for monetary sanctions as a deterrent.

---

[10] Rule 11(b)(3) permits litigants to make allegations without affirmative evidence, but only where (1) counsel has a good faith belief those allegations will "likely have evidentiary support after a reasonable opportunity for further investigation or discovery," and (2) those allegations are identified with a specific disclaimer that additional investigation is necessary. *See O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996). No such disclaimer appears in either complaint.

### B.     Vista Is Using this Litigation to Seek Disclosure of Competitively Sensitive Information Not Relevant to its Claims

Although this case ostensibly arises out of the buyer-seller relationship between Vista and Lawson, the two companies also are competitors. Law Decl. ¶ 3. From the outset, Vista has pressed for sweeping discovery—far beyond what is conceivably relevant even to Vista's trumped-up claims. *See, e.g.*, Smith Decl. Ex. 6 at pp. 2-7.

All of Vista's alleged damages flow from Smithfield's decision to terminate its relationship with Vista, which Vista alleges was based *solely* on Smithfield's discovery, in May of 2017, that product from three specific purchase orders had been found in China. AC ¶¶ 80-81. Thus, Vista has no legitimate basis for seeking discovery into the purchase, sale, or export of any other product, much less sweeping discovery into, *e.g.*, Lawson's exportation or sale of any product it ever purchased from Vista, all of Lawson's financial information since 2015, or the third parties involved in Lawson's sales to China. *See* Smith Decl. Ex. 6 at pp. 2-3. Such discovery would, however, give Vista a competitive advantage, while needlessly increasing the expense and burden of this litigation.

Vista's apparent intent to engage in discovery of unrelated transactions seeking competitively sensitive but irrelevant information suggests at least one improper motive behind the meritless complaints is to obtain an unfair competitive advantage over Lawson. For all the reasons set forth above, sanctions are therefore appropriate under Rules 11(b)(1) and 11(b)(3).

## VI.    Dismissal with Prejudice and Attorneys' Fees Are Appropriate Sanctions

Rule 11 sanctions must be limited to "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Vista's conduct in this case is precisely the sort of conduct Rule 11 was promulgated to prevent. "The rule continues to require litigants to 'stop-and-think' before initially making legal or factual contentions. It also,

however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting

upon a position after it is no longer tenable….”). Advisory Committee Note to 1993 amendments

to Fed. R. Civ. P. 11.

Sanctions may include “nonmonetary directives” or “an order directing payment to the

movant of part or all of the reasonable attorney’s fees and other expenses directly resulting from

the violation.” *Id.* Here, it would be appropriate to (1) dismiss the Amended Complaint, in its

entirety, with prejudice and (2) award Lawson its reasonable attorneys’ fees and other expenses

incurred in this lawsuit.

Without the unsupportable allegations discussed above, Vista’s Amended Complaint

collapses.[11] Every one of Vista’s claims is predicated on the allegation that Vista shipped product

containing ractopamine to China in violation of an agreement or agreements not to do so. Since

that allegation is demonstrably false, dismissal is less a sanction and more the inevitable

consequence of Vista’s assertion of meritless claims. *Cortec Industries, Inc. v. Sum Holding L.P.*

949 F.2d 42, 48 (2d Cir. 1991) (“Where a plaintiff is unable to allege any fact sufficient to

support its claim, a complaint should be dismissed with prejudice.”).

Where, as here, the complaint was presented for an improper purpose, and Vista’s counsel

has persisted in asserting meritless claims—cavalierly dismissing the gravity of their

misrepresentations—even after confronted with unrebutted evidence refuting those claims,

monetary sanctions are necessary to achieve the deterrent effect intended by Rule 11 sanctions.

*Bletas v. Deluca*, 2011 WL 13130879, *13 (S.D.N.Y Nov. 15, 2011) (“To adequately deter

[plaintiffs] from further advancing legally frivolous and factually unfounded claims against their

---

[11] Even if the allegations had some evidentiary basis, Vista still has not stated a viable claim for
relief, for reasons addressed in Lawson’s motion to dismiss pursuant to Rule 12(b)(6).

adversaries for an improper purpose, plaintiffs must be made to understand that not only is such conduct unacceptable but also that the…defendants will not be required to expend resources to subject plaintiffs' conduct to judicial scrutiny.").

This Court has broad discretion to award attorneys' fees as Rule 11 sanctions. *Lawrence v. Wilder Richman Securities Corp.* 417 Fed.Appx. 11, 15 (2d Cir. 2010). In this case, requiring Vista to reimburse Lawson for the fees it has incurred defending against frivolous claims—and in particular pursuing this motion—would be an appropriate and just sanction.

## CONCLUSION

For the reasons set forth above, Defendant Lawson Foods LLC respectfully requests that this Court enter an order pursuant to Fed. R. Civ. P. Rule 11 (1) dismissing Vista's claims in their entirety, with prejudice; (2) directing Plaintiff Vista Food Exchange, Inc. and its counsel to pay Lawson's reasonable costs and attorneys' fees incurred in defending this action, including in connection with this motion; and (3) such other and further relief as this Court deems reasonable and just under the circumstances.

Dated:  New York, New York
        April 20, 2018

                              Respectfully submitted,

                              **LUPKIN PLLC**


                              By:    /s/ Michael B. Smith
                                     Jonathan D. Lupkin (JL0792)
                                     Michael B. Smith (MS 3281)
                              80 Broad Street, Suite 1301
                              New York, NY 10004
                              Tel: (646) 367-2771
                              Fax: (646) 219-4870
                              jlupkin@lupkinpllc.com
                              msmith@lupkinpllc.com

                              *Counsel for Lawson Foods LLC*

19