**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

VISTA FOOD EXCHANGE, INC.,                      :

                  **Plaintiff,**        :

                                    :

       **v.**                             :        **1:17-cv-07454-ALC-SN**

                                    :        <u>**OPINION AND ORDER**</u>

LAWSON FOODS, LLC,                              :

                                    :

                **Defendant.**       :

                                    :

                                    :

-------------------------------------------------------------: x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __11/30/2020__

**ANDREW L. CARTER, JR., District Judge:**

On November 1, 2019, a Contempt Order was issued against Defendant Lawson Foods, LLC ("Lawson"), Simon Law, managing member of Lawson, and non-party Fortress Foods LLC ("Fortress"). Fortress failed to respond to a subpoena, and, upon an evidentiary hearing, Law and Lawson were held responsible as alter egos or in light of their control of Fortress. A fine was also imposed for each additional day Fortress did not answer the subpoena, for which Law and Lawson were held jointly and severally liable. To date, the subpoena remains unanswered and the fine has not been paid. The Court now reviews a Report and Recommendation in which Judge Netburn recommends granting in part a motion by Plaintiff Vista Food Exchange ("Vista") for further sanctions, including striking Lawson's answer and entering default judgment. For the reason that follow, the Court ADOPTS the Report and Recommendation.

BACKGROUND

The instant matter arises from the relationship between Vista, a wholesaler and distributor of various foods, and Lawson, a company to which Vista sold pork.

In May 2016, Smithfield Farmland Corp./Smithfield Foods ("Smithfield"), a company that supplied pork to Vista, learned that Lawson had purchased some of its pork, which was certified

1

for domestic consumption only, from Vista, and exported it to China. The export of pork that was not certified for Chinese consumption potentially exposed Smithfield to penalties under Chinese law. Smithfield promptly notified Vista that if any pork purchased and resold by Vista was again exported to China, it would stop selling its products to Vista. In response, Vista put all of Lawson's orders on hold and informed Lawson that Vista would not resume sales to Lawson unless Lawson promised not to export Vista-Smithfield pork to China.

On May 25, 2016, Simon Law, CEO of Lawson, signed an agreement certifying that Lawson Foods would not "export. . . .non-certified Smithfield pork products directly or through any third party where there is any reason to believe such product is destined for export to the PRC". Letter Agreement (ECF No. 160-2). The crux of the instant lawsuit, initiated on September 29, 2017, is that Lawson did not comply with this Letter Agreement. Instead, Vista alleges that Lawson used Fortress as a shell company to continue to sell pork to China in violation of the Letter Agreement without being detected by Vista and Smithfield. Smithfield, upon discovering further unauthorized sales by Lawson to China, terminated its relationship with Vista. Vista seeks, in part, to recover lost profits from the termination by Smithfield.

The Contempt Order

Over the course of discovery, Vista complained that Lawson had failed to comply with its discovery obligations, including by hiding certain records that were allegedly in the custody and control of Fortress Foods, Inc. The details of these compliance issues are laid out in detail in transcripts of discovery conferences and orders by Judge Netburn, to whom this matter was referred for general pre-trial proceedings. *See e.g.*, ECF Nos.79, 99, 149, 179. Relevant here is the obfuscation that led to the Contempt Order with which Lawson has not complied.

2

At a June 26, 2018 conference, Lawson represented to Judge Netburn that it did not export or ship pork to China or Chinese customers, and therefore had no documents responsive to certain of Vista's discovery requests. Judge Netburn ordered Lawson to file "an affidavit from the president or CEO or whoever is the appropriate person of Lawson, indicating that Lawson has not exported or shipped directly to customers in China Smithfield products. . . that Lawson purchased from Vista [from] January 1st, 2015 to. . . 12/31/2017" and, if Lawson had done so, "to include whatever identifying information [it] ha[d] about that product", such as ". . . serial numbers. . ., the description of the product, to whom it was exported, the date on which it was exported, and the names of any other non-parties that were involved in that exporting." ECF No. 79 at 29:13-30:12.

In response, Lawson submitted a declaration by Mr. Law. ECF No. 76-2. Therein, he attested that "the only records Lawson maintains concerning products sold to China are: (1) invoices and bills of lading reflecting Lawson's purchases and (2) journal entries reflecting amounts paid for product sold to China." ECF No. 76-2 ¶ 19. The declaration did not answer whether Lawson exported pork to China during the relevant period, or identify any such shipments or third parties involved, if so. Therefore, at an August 6, 2018 conference, Judge Netburn ordered a records deposition to answer these outstanding questions. ECF No. 99 at 31:23-32:16.

On August 28, 2018, Lawson filed a Corrected Declaration of Simon Law. ECF No. 101-2. Therein, Law admitted to selling pork to China. "By way of explanation" for prior representations to the contrary, Law stated that "Lawson ha[d] not sold any pork products to China since mid-2017 due to unfavorable political and economic conditions". ECF No. 101-2 at ¶ 10. Law admitted that "Lawson shipped product to China through a captive intermediary called Fortress Foods, LLC" and "listed Fortress as the product's shipper." ECF No. 101-2 at ¶ 41. He

3

further admitted that "[t]he original declaration left out the fact that Lawson handled the arrangements to have the shipping container transported from the United States to China and paid for the shipping" for Fortress Foods shipments, ECF No. 101-2 at ¶ 39. Law conceded that his initial declaration "failed to identify electronic records that [he] now realize[d] were in Lawson's possession, custody, or control". ECF No. 101-2 at ¶ 42.

On September 10, 2018, after the records deposition, Vista sought an extension of time for discovery, in part to secure discovery of Fortress Foods. ECF No. 104 at 3. Lawson issued a subpoena for Fortress Foods to produce documents on October 15, 2018. ECF No. 104-2. Fortress did not reply to the subpoena. Thereafter, Vista requested that Judge Netburn issue an order to show cause why Fortress should not be sanctioned for failure to comply with the subpoena. ECF No. 124. Vista also argued to Judge Netburn that Fortress was a "front or alter ego for Lawson" and that Law "prepared the withheld records in Fortress's name". ECF No. 124 at 1.

On January 8, 2019, Judge Netburn ordered a status report including a summary of "Plaintiff's requests for documents and the extent to which the requested documents were provided to Vista." ECF No. 131 at 1. Lawson reported that it had made substantial progress in producing documents. ECF No. 131 at 2. However, Vista reported the production included "no pleading indicating to which demands the documents [were] purportedly responsive", "were produced in a format that is not searchable and [had no] load file for review in Vista's discovery platform, as required by the parties' ESI Protocol." ECF No. 132. Vista therefore required an extension of time to review the documents prior to filing any response on the status of discovery, which Judge Netburn granted. ECF No. 133.

On February 1, 2019, Vista filed a motion to compel Lawson to produce "all documentation sufficient to track all pork product from the time it was delivered to Lawson to the time it reached

the customer in the People's Republic of China [] during the period from January 1, 2015 to present"; "all documentation relating to the sale of all pork product exported to the PRC during the relevant time period that Lawson was required to create, complete or retain under the applicable regulations of the United States Food and Drug Administration; United States Department of Agriculture; Customs and Border Protection (Department of Homeland Security); and Internal Revenue Service; and "to produce the log-in information including user name and password for the Automated Commercial Environment ('ACE') portal account that Lawson used to submit documents/information with the Customs and Border Protection ('CBP')". ECF No. 134 at ¶¶ 1-3. Further, Vista requested that Judge Netburn issue an order for Fortress Foods, its managing partner Hong Lin, and Ada Law, Simon Law's wife, who was identified as a contact for Fortress on an invoice that was produced to Vista, to show cause why they should not be sanctioned for failing to comply with the Vista subpoena. ECF No. 134 ¶ 4.

On April 18, 2019, Judge Netburn found that "Lawson's production [had] been inadequate and that it [] failed to produce the documents that it should have maintained under both the regulatory schemes that govern its exporting business and its obligations to preserve documents once it was aware of the possibility of litigation over the subject matter". ECF No. 149 at 2. Judge Netburn ordered Lawson "to produce all records that reflect its purchase and exporting of Smithfield-Vista pork products to the PRC from January 1, 2015, to the present", or Vista would be "entitled to an adverse inference at trial regarding Lawsons failure to maintain its records". ECF No. 149 at 3. Judge Netburn also ordered Fortress and its managing partner Hong Lin to show cause why they should not be held in contempt for failing to comply with a subpoena. ECF No. 149 at 4. She declined to issue an order to show cause as to Ada Law, whose testimony was deemed unnecessary at that juncture, ECF No. 149 at 4. Further, an evidentiary hearing was set on whether

Hong Lin and Fortress Foods should be held in contempt for failing to comply with a subpoena, at which hearing Law would also testify regarding "the relationship between Fortress Foods and Lawson to determine whether any contempt finding should also be entered against Lawson, Simon Law or both." ECF No. 149 at 5.

The evidentiary hearing was held on July 16, 2019. Lin did not appear, so Law was the only witness examined. During that hearing Law testified, *inter alia*, that Law prepared the health certificates for shipments by Fortress, 43:17-44:5; that Lawson was the exporter of record for shipments by Fortress Foods, 44:6-12, 67:18-68:21; that Law provided instructions to a freight forward, F.C. Gerlach, regarding shipments by Fortress Foods to China, 49:1-12; that Lawson paid the bill from F.C. Gerlach for shipments by Fortress Foods, 56:16-20; that Fortress Foods was listed as an affiliate of Lawson on a shipping contract so it could use Lawson's overseas shipping rate, 65:9-24; that Lawson received money from sales of pork to China where Fortress Foods was the nominal seller, ECF No. 179 at 19:22-20:2; and that Law was not aware of any money being paid to Fortress Foods in connection with those sales and did not send any money to Fortress Foods, 70:16-72:3.

By Opinion and Order[1] dated November 1, 2019, Judge Netburn issued a finding of contempt against Fortress Foods, as well as Lawson, in light of overwhelming evidence that Lawson and Law control (or, are) Fortress Foods. Judge Netburn imposed a daily fine of $100 from the October 15, 2018 due date of the Fortress Foods subpoena and entered this fine against Fortress Foods and Lawson jointly and severally. She further gave Fortress Foods and Lawson 14

---

[1] The Parties consented to Judge Netburn deciding the contempt motion by Notice, Consent and Reference of a Dispositive Motion to Magistrate Judge, which the Court approved. ECF No. 171. Given Lawson's consent to Judge Netburn deciding the contempt motion, Lawson's argument that Judge Netburn "usurped" the jury by doing so is without merit.

days from the date of the order to comply with the subpoena. If Fortress Foods or Lawson did so, they could move to set aside the finding of civil contempt and the fine. Finally, Judge Netburn warned Lawson that if "Lawson again fail[ed] to produce responsive documents, . . . upon application from Vista, the Court w[ould] enter a default against Lawson and move the case to a determination of the appropriate judgment". ECF No. 172 at 13.

Lawson moved for a stay of the Contempt Order pending an interlocutory appeal, which was denied. *See* ECF No. 183. On November 13, 2019, Lawson filed a notice that it appealed the Contempt Order to the Second Circuit. ECF No. 175. On June 2, 2020, the Court of Appeals dismissed Lawson's appeal for lack of jurisdiction. *See* ECF No. 195.

<u>The Instant Motion and Report and Recommendation</u>

On January 23, 2020, Vista filed a Motion for Sanctions in light of Lawson's failure to comply with the Contempt Order. ECF No. 184. Therein, Vista requested that default judgment be entered against Lawson, that further contempt sanctions be entered against the Lawson, Law and Fortress (together, the "Contemnors"), and that Vista be awarded attorneys' fees and costs. ECF No. 184 at 2. On February 10, 2020, Lawson filed an opposition. ECF No. 189. Vista replied on February 24, 2020. ECF No. 192.

On October 26, 2020, Judge Netburn issued a Report and Recommendation recommending that Vista's motion be granted in part and denied in part. Judge Netburn reiterated the finding from the Contempt Order: "Lawson, through its managing member and president Simon Law, created Fortress Foods solely to evade its contractual obligations to Vista (and Smithfield). Lawson has further failed to comply with its discovery obligations both by inadequately maintaining its records and by falsely characterizing records ostensibly under the control of Fortress Foods as beyond its

7

reach". ECF No. 197 at 3. She concluded that the Contemnor's non-compliance was willful; that, in view of Lawson's failure to comply with the Contempt Order, lesser sanctions would not be effective; that the length of non-compliance with the Contempt Order counseled in favor of further sanctions; and that Lawson had been warned default judgment might be entered.

Specifically, Judge Netburn recommends: that this Court strike Lawson's answer, enter default against Lawson and remand the matter to Judge Netburn to conduct a damages inquest; that any judgment be held against Lawson, Fortress Foods and Simon Law jointly and severally; that this Court award attorney's fees incurred as of April 2018 and caused by Lawson's misconduct, which includes the filing of this motion; that the Court remand the matter to Judge Netburn to conduct a review of Vista's attorney's fees; and that any attorney's fee award be held against Lawson, Fortress Foods and Simon Law jointly and severally. Judge Netburn further recommends that any judgment include the fine issued by the Contempt Order, starting on October 15, 2018, until the date the District Court adopts, modifies or rejects the Report, but that the Court decline to impose further monetary sanctions or imprison Simon Law.

<u>Lawson's Objections to the R&R</u>

On November 9, 2020, Lawson filed an objection purporting to "object to each and every portion of Magistrate Judge Netburn's Report and Recommendation". ECF No. 198 at 1. Specifically, Lawson objects to the conclusion that its failure to comply with the Contempt Order was "willful" because "the documents sought have either been provided, simply do not exist or are in the possession of Fortress." ECF No. 198 at 6; 8 ("It was no more possible for Lawson and Simon Law to produce Fortress records that are not in their possession than it would be for them to produce the records of Vista, another customer and separate entity involved in multiple transactions with Lawson.").

Lawson also objects that the Report and Recommendation "failed to carefully consider the range of potential sanctions available under Rule 37 to fit the circumstances in this case." ECF No.198 at 22. As Lawson sees it, the Report and Recommendation "addressed [default] not as a 'last resort,' but as the only and ultimate consideration." ECF No. 198 at 21.

Lawson further objects to the Report and Recommendation's conclusion that he failed to comply with the Contempt Order for over a year and was warned such non-compliance could result in default judgment. Lawson contends that its attempts to stay or overturn the Contempt Order should mitigate the length of time of non-compliance.

Finally, Lawson objects to the Report and Recommendation to the extent it "seeks to assess attorney's fees against Defendants for 'bad faith' acts designed to multiply the proceedings". ECF No. 198 at 25. Lawson contends that it "in good faith, believed that Judge Netburn had erred for all of the above reasons and further impermissibly and inadvertently usurped the jury function in abrogation of the Court's authority". ECF No. 198 at 26. This is because, according to Lawson, the determination that Lawson was an alter ego of Fortress "transformed an otherwise routine contempt hearing into the procedural equivalent of a trial" because it decided "the ultimate issue of the action". ECF No. 198 at 26.

<u>Vista's Response to the Report and Recommendation and Response to Lawson's Objections</u>

On November 9, 2020, Vista filed a brief letter requesting that this Court's "contempt and sanctions order include defined escalating coercive consequences (increasing daily fine converting to confinement for Simon Law) if Contemnors also violate [this Court's] order by not promptly

paying the civil contempt fines to Vista and providing proof of payment to the Court". ECF No. 199.

On November 23, 2020, Vista responded to Lawson's objections. Vista argues that the objections, which in large part challenged the underlying conclusions of the Contempt Order, are barred by law of the case and waiver. Vista further argues that were this Court to review the hearing evidence *de novo* it would conclude the Report and Recommendation's findings were proper.

STANDARD OF REVIEW

On dispositive motions, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The court may adopt those portions of the Report to which neither party timely objects, as long as there is no clear error on the face of the record. *DiPilato v. 7-Eleven, Inc*., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009). A district court must review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[t]o the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *DiPilato*, 662 F. Supp. 2d at 339; *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' argued in an attempt to 'engage the district court in a rehashing of the same arguments set forth in the original petition.'") (citation omitted). After conducting the appropriate level of review, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1).

DISCUSSION

As an initial matter, the Court must consider the nature of the objections to determine what standard of review to apply. Although Lawson's objections purport to challenge the instant Report and Recommendation, they focus in large part—and improperly—on the holdings of the Contempt Order. For example, the contention that Lawson did not willfully defy the Contempt Order because the relevant documents are "in the possession of Fortress" is a clear attempt to relitigate the Contempt Order's conclusion that Lawson did indeed control Fortress and had an obligation to maintain the requested records. These objections, which are tantamount to a request for reconsideration of the Contempt Order, are untimely and not well taken.

The law of the case doctrine "forecloses re-litigation of issues expressly or impliedly decided by the [ ] court." *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002) (internal citations omitted). Absent "cogent or compelling reasons", the law of the case controls. *See Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (internal quotations omitted). Here, the Contempt Order concluded that Lawson and Law were responsible for Fortress's failure to comply with discovery. No cogent or compelling reason has been presented to depart from this conclusion.

Rather, Lawson has reiterated its continued dissatisfaction and disagreement with the Contempt Order—which is simply beside the point. "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Maness v. Meyers*, 419 U.S. 449, 458-59 (1975). Here, the Contempt Order was neither stayed nor successfully appealed. Compliance was not a matter for Lawson's discretion.

11

Because the weight of Lawson's objections attempt to re-litigate an issue already decided on a prior motion by re-asserting arguments already considered, they do not trigger *de novo* review. The sole objection that does not seek to improperly relitigate the Contempt Order is that the Report and Recommendation did not properly consider alternative sanctions. The Court will consider that issue *de novo* but will otherwise review for clear error.

On the issue of possible lesser sanctions, Lawson contends that the Report and Recommendation "failed to carefully consider the range of potential sanctions available under Rule 37" and "did not discourse upon whether a lesser sanction would be ineffective and unfair to defendants". ECF No. 198 at 21; 23. Specifically, "lesser sanctions could have included less draconian forms of relief such as preclusion of the Defendants from introducing particular evidence in support of their claims, or from testifying at trial in this matter." ECF No. 198 at 23.

Reviewing Lawson's conduct *de novo*, this Court agrees with Judge Netburn's conclusion that default is the appropriate sanction. The Contempt Order with which Lawson has failed to comply clearly constitutes a lesser sanction that has been attempted in this matter. The Contempt Order allowed a 14-day period for Lawson to cure by complying with the Fortress subpoena. Lawson did not do so. Even today, Lawson has failed to pay the fine imposed by the Contempt Order or to comply with the subpoena. "[D]istrict courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010). On the record in this matter, the Court concludes, as Judge Netburn did, that default is warranted.

Finally, Vista requested that the court include a "defined escalating coercive consequences (increasing daily fine converting to confinement for Simon Law) if Contemnors" do not promptly pay the civil contempt fines. The Court deems this unnecessary at this juncture.

The Court reviews the remainder of the Report and Recommendation for clear error.

Finding no clear error, the Court ADOPTS the Report and Recommendation in full.

**SO ORDERED.**
**Dated: November 30, 2020**
      **New York, New York**

**ANDREW    L.    CARTER,    JR.**
**United States District Judge**

13